**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SCENIC AMERICA, INC.,

      Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, RAY LAHOOD,
FEDERAL HIGHWAY ADMINISTRATION,
and VICTOR MENDEZ,

      Defendants,

      and

OUTDOOR ADVERTISING ASSOCIATION
OF AMERICA, INC.,

      Intervenor-Defendant.

Civil Action No. 13-cv-0093 (JEB)

## <u>OUTDOOR ADVERTISING ASSOCIATION OF AMERICA, INC.'S<br>MOTION TO DISMISS</u>

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Intervenor-Defendant Outdoor Advertising Association of America, Inc., hereby moves this Court to dismiss Plaintiff Scenic America's complaint with prejudice, because this Court lacks subject matter jurisdiction over Plaintiff's claims and because Plaintiff has failed to state a claim upon which relief may be granted.  The grounds for this motion are set forth in the accompanying memorandum of points and authorities.  A proposed order is attached.

Respectfully submitted,

By: ___/s/ Kannon K. Shanmugam_____
    Barry S. Simon (#245209)
    Kannon K. Shanmugam (#474304)
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, DC 20005
    T:  (202) 434-5000
    F:  (202) 434-5029

    *Counsel for Outdoor Advertising*
    *Association of America, Inc.*

Dated:  June 7, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SCENIC AMERICA, INC.,

      Plaintiff,

         v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, RAY LAHOOD,
FEDERAL HIGHWAY ADMINISTRATION,
and VICTOR MENDEZ,

      Defendants,

      and

OUTDOOR ADVERTISING ASSOCIATION
OF AMERICA, INC.,
1850 M Street, N.W., Suite 1040,
Washington, DC 20036,

      Intervenor-Defendant.

Civil Action No. 13-cv-0093 (JEB)

<u>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OF OUTDOOR ADVERTISING ASSOCIATION OF AMERICA, INC.**</u>

Barry S. Simon (#245209)
Kannon K. Shanmugam (#474304)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
T:  (202) 434-5000
F:  (202) 434-5029

*Counsel for Outdoor Advertising
Association of America, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    Regulatory Framework ...............................................................................1

    B.    FHWA Guidance .........................................................................................3

    C.    Digital Billboards........................................................................................4

    D.    The Instant Complaint.................................................................................5

ARGUMENT ........................................................................................................................6

I.     PLAINTIFF LACKS STANDING TO CHALLENGE THE 2007 GUIDANCE ...............7

    A.    The Complaint Does Not Allege Sufficient Facts To Establish Plaintiff's
           Standing To Sue On Behalf Of Its Members .............................................7

           1.    Plaintiff Has Not Alleged A Particularized Injury To Any Of Its
                  Members .........................................................................................8

           2.    Plaintiff Has Not Alleged Causation.........................................12

           3.    Plaintiff Has Not Alleged Redressability..................................14

    B.    The Complaint Does Not Allege Sufficient Facts To Establish Plaintiff's
           Standing To Sue On Its Own Behalf.........................................................15

           1.    Plaintiff Has Not Alleged A Particularized Injury To Itself .....................15

           2.    Plaintiff Has Not Alleged Causation.........................................17

            3.    Plaintiff Has Not Alleged Redressability..................................18

II.    THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE 2007
       GUIDANCE DOES NOT CONSTITUTE FINAL AGENCY ACTION.........................18

    A.    No Legal Consequences Flow From FHWA's Guidance.....................................19

    B.    The Guidance Does Not Mark The Consummation Of FHWA's
           Decisionmaking Process ...........................................................................24

CONCLUSION....................................................................................................................26

# TABLE OF AUTHORITIES

## CASES

Page

*Allen* v. *Wright*, 468 U.S. 737 (1984) ...................................................................13

*Alliance for Bio-Integrity* v. *Shalala*, 116 F. Supp. 2d 166 (D.D.C. 2000) ..................................23

*American Library Association* v. *FCC*, 401 F.3d 489 (D.C. Cir. 2005).........................................7

*American Petroleum Institute* v. *EPA*,
    684 F.3d 1342 (D.C. Cir. 2012), *cert. denied*, 133 S. Ct. 1724 (2013) ...........................24, 25

*Bennett* v. *Spear*, 520 U.S. 154 (1997)...................................................................19, 21

*Black* v. *LaHood*, 882 F. Supp. 2d 98 (D.D.C. 2012) .............................................................9, 14

*Californians for Renewable Energy* v. *Department of Energy*,
    860 F. Supp. 2d 44 (D.D.C. 2012).......................................................................8, 9, 10, 11

*Center for Auto Safety* v. *NHTSA*, 452 F.3d 798 (D.C. Cir. 2006) .................................... *passim*

*Center for Food Safety* v. *Salazar*, 898 F. Supp. 2d 130 (D.D.C. 2012) ...............................19, 20

*Center for Law and Education* v. *Department of Education*:
    315 F. Supp. 2d 15 (D.D.C. 2004).......................................................................15
    396 F.3d 1152 (D.C. Cir. 2005)...........................................................................11, 16, 17

*Chamber of Commerce* v. *EPA*, 642 F.3d 192 (D.C. Cir. 2011) ....................................................8

*Citizens Alert Regarding the Environment* v. *Leavitt*, 355 F. Supp. 2d 366 (D.D.C. 2005)..........13

*CSI Aviation Services, Inc.* v. *DOT*, 637 F.3d 408 (D.C. Cir. 2011)............................................19

*Equal Rights Center* v. *Post Properties, Inc.*, 633 F.3d 1136 (D.C. Cir. 2011) ...........................17

*Erby* v. *United States*, 424 F. Supp. 2d 180 (D.D.C. 2006)............................................................6

*Florida Audubon Society* v. *Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) .........................................7, 12

*Friends of the Earth, Inc.* v. *Laidlaw Environmental Services, Inc.*, 528 U.S. 167 (2000).......7, 10

*Grand Lodge of Fraternal Order of Police* v. *Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001) ...........6

*Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982)...............................................................17

*Holistic Candlers and Consumers Association* v. *FDA*,
    664 F.3d 940 (D.C. Cir. 2012), *cert denied*, 133 S. Ct. 497 (2012) ................................19, 23

ii

Page

Cases—continued:

*Independent Equipment Dealers Association* v. *EPA*, 372 F.3d 420 (D.C. Cir. 2004) ..........20, 24

*International Brotherhood of Teamsters* v. *TSA*, 429 F.3d 1130 (D.C. Cir. 2005) ......................9

*Jones* v. *Louisiana State Bar Association*, 738 F. Supp. 2d 74 (D.D.C. 2010),
    *aff'd*, 2011 U.S. App. LEXIS 20308 (D.C. Cir. Oct. 3, 2011)................................................13

*Long Term Care Pharmacy Alliance* v. *UnitedHealth Group, Inc.*,
    498 F. Supp. 2d 187 (D.D.C. 2007)...................................................................................16

*\*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992)......................................................... *passim*

*\*Massachusetts Manufacturing Extension Partnership* v. *Locke*,
    723 F. Supp. 2d 27 (D.D.C. 2010)............................................................................21, 22, 23

*\*National Ass'n of Home Builders* v. *Norton*, 415 F.3d 8 (D.C. Cir. 2005) .............................19, 24

*\*National Taxpayers Union, Inc.* v. *United States*, 68 F.3d 1428 (D.C. Cir. 1995) ..................7, 15

*National Treasury Employees Union* v. *United States*, 101 F.3d 1423 (D.C. Cir. 1996)..............16

*Natural Res. Def. Council* v. *EPA*, 464 F.3d 1 (D.C. Cir. 2006) .....................................................12

*Papasan* v. *Allain*, 478 U.S. 265 (1986) ........................................................................................6

*\*Reliable Automatic Sprinkler Co.* v. *Consumer Product Safety Commission*,
    324 F.3d 726 (D.C. Cir. 2003)................................................................................24, 25, 26

*Sierra Club* v. *Morton*, 405 U.S. 727 (1972) .............................................................................10

*Simon* v. *Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) ...........................12

*\*St. Croix Chippewa Indians of Wisconsin* v. *Kempthorne*, No. 07-2210,
    2008 WL 4449620 (D.D.C. Sept. 30, 2008),
    *aff'd on other grounds*, 384 Fed. Appx. 7 (D.C. Cir. 2010) .......................................20, 21, 22

*Summers* v. *Earth Island Institute*, 555 U.S. 488 (2009)...........................................................8, 9

*Trudeau* v. *FTC*, 456 F.3d 178 (D.C. Cir. 2006) ..........................................................................6

*United Transportation Union* v. *ICC*, 891 F.2d 908 (D.C. Cir. 1989) ...........................................9

*West* v. *Horner*, 810 F. Supp. 2d 228 (D.D.C. 2011) ..................................................................19

Page

Cases—continued:

*Western Wood Preservers Institute* v. *McHugh*, No. 12-1253,
    ___ F. Supp. 2d ___, 2013 WL 692789 (D.D.C. Feb. 27, 2013)............................8

## STATUTES, REGULATIONS, AND RULES

5 U.S.C. § 553..........................................................................................................1

5 U.S.C. § 704........................................................................................................18

23 U.S.C. § 131........................................................................................................1

23 U.S.C. § 131(b).............................................................................................2, 3, 4

23 U.S.C. § 131(d)...............................................................................................2, 10

23 U.S.C. § 131(j)....................................................................................................3

23 U.S.C. § 131(*l*).............................................................................................2, 18

Ala. Admin. Code r. 450-10-1-.01 to 450-10-1.14 (2011) ....................................4

Ariz. Rev. Stat. § 28-7902(E)-(L) (2013) .........................................................4, 5

Ark. Admin. Code § 001.01.2-7 (2013) .................................................................5

Conn. Gen. Stat. § 13a-123(f) (2013) ....................................................................4

Del. Code. Ann. Title 17, § 1110(b)(3)(e) (2013) .................................................5

700 Mass. Code Regs. 3.17 (2013) ........................................................................5

Or. Rev. Stat. § 377.710(6) (2013) ........................................................................4

Or. Rev. Stat. § 377.720(3)(d) (2013)....................................................................4

43 Tex. Admin. Code §§ 21.251-21.260 (2012) ....................................................4

23 C.F.R. § 750.704(a)(4) ......................................................................................2

23 C.F.R. § 750.704(a)(5) ......................................................................................2

23 C.F.R. § 750.705(b) ..........................................................................................2

23 C.F.R. § 750.705(j) ...........................................................................................2

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 6

Page

Rule—continued:

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 6

**MISCELLANEOUS**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1987) ...............7

The Outdoor Advertising Association of America, Inc. (OAAA), respectfully submits this Memorandum in Support of its Motion to Dismiss.

## INTRODUCTION

Plaintiff Scenic America, Inc., challenges a 2007 memorandum issued by the Federal Highway Administration (FHWA), an agency within the Department of Transportation (DOT), concerning the use of changeable electronic variable message signs (CEVMS), also known as digital billboards.  *See* FHWA, DOT, Memorandum: Guidance on Off-Premise Changeable Message Signs (Sept. 25, 2007) (2007 Guidance).[1]  Scenic America requests an order vacating the agency's 2007 Guidance and declaring that Defendants violated the Administrative Procedure Act (APA), 5 U.S.C. § 553, and the Highway Beautification Act of 1965 (HBA), 23 U.S.C. § 131.

The Complaint should be dismissed both because this Court lacks jurisdiction over the dispute, Fed. R. Civ. P. 12(b)(1), and because the Complaint fails to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6).  Scenic America has not pleaded sufficient facts to show that it has standing to challenge the 2007 Guidance, either on its members' behalf or on its own.  And even if it had standing, the 2007 Guidance is not final agency action subject to judicial review.  Dismissal is therefore warranted.

## BACKGROUND

### A.        Regulatory Framework

Enacted in 1965, the HBA establishes a grant-in-aid condition with which States must comply in order to receive the full allocated amount of federal highway funding.  The Act specifically permits outdoor advertising signs in valid zoned or unzoned commercial or industrial are-

---

[1] The 2007 Guidance is incorporated into the Complaint by reference and attached hereto.

as.  The "size, lighting and spacing" of signs in unzoned commercial or industrial areas are governed by agreements negotiated between the individual States and the Secretary of Transportation.  23 U.S.C. § 131(d); 23 C.F.R. § 750.704(a)(4), (5), (b).  All fifty States entered into federal-state agreements pursuant to the HBA in the 1960s and early 1970s.  Compl. ¶ 31.  States retain "full authority under their zoning laws" to zone areas for commercial or industrial purposes.  23 U.S.C. § 131(d).  Whenever a State or a local zoning authority has determined that the size, lighting, and spacing of signs in commercial or industrial areas is consistent with customary use, the Secretary is required to accept that determination "in lieu of controls" by the applicable federal-state agreement.  *Id.*

The HBA requires States to maintain "effective control" of outdoor advertising along the federal highway system.  23 U.S.C. § 131(b).  "Effective control" includes ensuring that signs erected in commercial or industrial areas comply, at a minimum, with the requirements of the applicable federal-state agreement.  23 C.F.R. § 750.705(b).  States must also submit proposed regulations and enforcement procedures to FHWA.  Regional "Division Offices" then assess whether the proposals comply with the applicable federal-state agreement and FHWA's own regulations implementing the HBA.  *See* 23 C.F.R. § 750.705(j).

If a State fails to exercise effective control of its outdoor advertising, DOT may reduce the State's federal highway funding by 10 percent.  23 U.S.C. § 131(b).  The HBA specifies the required process that DOT must follow "before making a final determination to withhold funds from a State," and allows a State to obtain judicial review of an adverse determination.  *Id.* § 131(l).

B.     FHWA Guidance

In 1996, FHWA observed an "increased use of changeable message signs" and represen-

tations by States that such signs complied with the terms of their agreements.  FHWA, DOT,

Memorandum: Off-Premise Changeable Message Signs (July 17, 1996) (1996 Guidance).  In re-

sponse, FHWA issued a memorandum to provide guidance to its Division Offices in reviewing

proposed state laws on the subject—and, in particular, in assessing whether those laws comply

with the applicable federal-state agreements.  The 1996 Guidance advised the Division Offices

that "[c]hangeable message signs are acceptable for off-premise signs, regardless of the type of

technology used, if the interpretation of the State/Federal agreement allows such signs." *Id.*[2]

Thus, since the 1996 Guidance, FHWA "will concur with a State that can reasonably interpret

the State/Federal agreement to allow changeable message signs if such interpretation is con-

sistent with State law." *Id.*

In 2007, advances in technology encouraged FHWA to issue additional guidance con-

cerning the application of the 1996 Guidance to changeable *electronic* variable message signs—

*i.e.*, digital billboards.  Consistent with the 1996 Guidance, a number of FHWA Division Offices

had already agreed that various state regulations permitting digital billboards under certain cir-

cumstances were consistent with the federal-state agreements applicable to those particular

States.  In the 2007 Guidance—which took the form of another memorandum to its Division Of-

fices—FHWA affirmed the policy of the 1996 Guidance and stated that "[c]hangeable message

---

[2] The 1996 Guidance referred to "[o]ff-premise" signs, in contrast to "on-premise" signs. Off-premise signs advertise activities conducted somewhere other than the property on which the sign is located.  The 1996 Guidance addressed only off-premise signs because Congress had amended the HBA in 1978 to clarify that on-premise signs—which the HBA had explicitly per-mitted—were not in breach of any federal-state agreement or the requirement of effective control even if they were "changed at reasonable intervals by electronic process or remote control."  23 U.S.C. § 131(j); *see id.* § 131(c)(3).

signs, including Digital/LED Display CEVMS, are acceptable for conforming off-premise signs, if found to be consistent with the [applicable federal-state agreement] and with acceptable and approved State regulations, policies and procedures." 2007 Guidance 2.  FHWA stated that "[p]roposed laws, regulations, and procedures that would allow permitting CEVMS subject to acceptable criteria (as described below) do not violate a prohibition against 'intermittent' or 'flashing' or 'moving' lights as those terms are used in the various [federal-state agreements]." *Id.* at 1.  In the memorandum, FHWA compiled a list of state standards for digital billboards that FHWA Division Offices had previously approved, noting that they may "be useful in reviewing State proposals on this topic." *Id.* at 3-4.  The list included various state laws and regulations for digital billboards establishing standards regarding duration of message, transition time, brightness, spacing, and location, among other topics. *Id.*  At the same time, FHWA emphasized that the memorandum was simply "intended to provide information to assist the Divisions in evaluating [state] proposals," and not "to amend applicable legal requirements." *Id.* at 4.  FHWA also indicated that it "may provide further guidance in the future as a result of additional information received through safety research, stakeholder input, and other sources." *Id.* at 1.

### C.    Digital Billboards

Some thirty-seven States have provided for digital billboards by statute or administrative rule, and an additional six have done so by interpretation of the applicable federal-state agreement. *See, e.g.*, Ariz. Rev. Stat. § 28-7902(E)-(L) (2013); Conn. Gen. Stat. § 13a-123(f) (2013); Ala. Admin. Code r. 450-10-1-.01 to 450-10-1.14 (2011); 43 Tex. Admin. Code §§ 21.251-21.260 (2012).  In addition, over 400 cities have ordinances permitting digital billboards.

Digital billboards erected pursuant to those state and local laws typically involve static messages that change no more than every six to eight seconds, with the change process occurring in two seconds or less and without creating the appearance of movement. *See, e.g.*, Or. Rev.

4

Stat. §§ 377.710(6) (2013), 377.720(3)(d) (2013); Ariz. Rev. Stat. § 28-7902(E)-(L).   Many States restrict the intensity of light permissible on digital billboards and impose limitations corresponding to the time of day or the amount of natural light.  *See, e.g.*, Del. Code. Ann. tit. 17, § 1110(b)(3)(e) (2013); Ark. Admin. Code § 001.01.2-7 (2013); 700 Mass. Code Regs. 3.17 (2013); *see also* Ariz. Rev. Stat. § 28-7902(E)-(L) (2013) (requiring digital billboards to be turned off from 11 p.m. until sunrise).

In comparison with traditional billboards, digital billboards facilitate communication of more speech with fewer physical signs, make outdoor advertising more relevant and timely, and provide opportunities for real-time law-enforcement and public-service messages.  *See, e.g.*, 700 Mass. Code Regs. 3.17(10), (12) (2013).  Several government organizations—including the Federal Bureau of Investigation, the National Center for Missing and Exploited Children, the U.S. Marshals Service, and the Federal Emergency Management Agency—routinely use commercial digital billboards to issue emergency messages to the public.  By agreement with billboard owners, those organizations can instantly change the content of a digital billboard to display emergency information, vastly increasing the size of the audience and the timeliness of the emergency warnings and alerts.

### D.    The Instant Complaint

In this lawsuit before the Court—filed more than five years after the 2007 Guidance issued—Plaintiff Scenic America, Inc., contends that the 2007 Guidance violated the APA and the HBA.  Plaintiff alleges that, before the 2007 Guidance, "the vast majority" of federal-state agreements prohibited digital billboards, and the 2007 Guidance promulgated a "legislative rule" that "reversed these long-standing prohibitions."  Compl. ¶¶ 1-3.  Count 1 of the Complaint alleges that, because the 2007 Guidance "created new legal rights and duties," the APA required FHWA to engage in notice-and-comment rulemaking.  *Id.* ¶¶ 50-53.  Count 2 alleges that the

2007 Guidance violated the HBA because it added a "new lighting standard" to every federal-state agreement without amending those agreements.  *Id.* ¶¶ 55-56.  And Count 3 alleges that the substance of the "new lighting standard" allegedly created by the 2007 Guidance violated the HBA because digital billboards are "inconsistent with customary use."  *Id.* ¶¶ 58-61.

In the Complaint, Plaintiff alleges that it is a non-profit organization representing individuals and affiliate organizations concerned about scenic conservation and adversely affected by digital billboards.  Compl. ¶ 9.  Plaintiff alleges that the 2007 Guidance has harmed the organization by causing it to spend resources opposing more digital billboards than it had in the past, and that the 2007 Guidance has caused the organization's members "economic, aesthetic, recreational, and psychological harm."  *Id.* ¶¶ 16, 18.

## ARGUMENT

The Complaint should be dismissed for two independent reasons.  *First*, this Court lacks subject-matter jurisdiction because Plaintiff does not have standing to bring this suit, either on its own behalf or on behalf of its members.  *See* Fed. R. Civ. P. 12(b)(1).  *Second*, Plaintiff fails to state a claim because the 2007 Guidance is not final agency action subject to judicial review.  *See* Fed. R. Civ. P. 12(b)(6).

In order to survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has subject-matter jurisdiction to hear the case.  *See*, *e.g.*, *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Erby* v. *United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006).  Although the Court must accept the factual allegations of the Complaint as true, the Court need not accept as true either "'a legal conclusion couched as a factual allegation'" or an unsupported inference.  *Trudeau* v. *FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986)).  Thus, "Plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion."  *Grand Lodge of Frater-*

6

*nal Order of Police* v. *Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (alteration in original) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987)).

# I.   PLAINTIFF LACKS STANDING TO CHALLENGE THE 2007 GUIDANCE

An organizational plaintiff must establish Article III standing to sue either on its members' behalf or on its own.  In either case, the "irreducible constitutional minimum of standing" requires the plaintiff to plead sufficient facts to demonstrate (1) a concrete and particularized injury; (2) a causal relationship between the injury and the challenged conduct of the defendant; and (3) a likelihood that a favorable decision in the case will redress that injury.  *Lujan*, 504 U.S. at 560-61; *Florida Audubon Society* v. *Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996).  Plaintiff bears the burden of establishing all three elements of standing.  *National Taxpayers Union, Inc.* v. *United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995).  Because Plaintiff has not met that burden either on its members' behalf or on its own, no Article III "case" or "controversy" exists, and the action must be dismissed for lack of subject-matter jurisdiction.

## A.   The Complaint Does Not Allege Sufficient Facts To Establish Plaintiff's Standing To Sue On Behalf Of Its Members

To claim standing on behalf of its members, Plaintiff must show that "its members would otherwise have standing to sue in their own right."  *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000); *see also American Library Ass'n* v. *FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005).  Plaintiff has not met its burden because it has failed to identify any member of its organization that has suffered a particularized injury caused by the 2007 Guidance that would be redressed by a favorable decision in this case.

### 1.    Plaintiff Has Not Alleged A Particularized Injury To Any Of Its Members

Plaintiff has not identified any member of its organization who has been harmed by the 2007 Guidance.  "[I]t is 'not enough to aver that unidentified members have been injured.'" *Californians for Renewable Energy* v. *Department of Energy*, 860 F. Supp. 2d 44, 48 (D.D.C. 2012) (quoting *Chamber of Commerce* v. *EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011)).  "Rather, the organization must name at least one member who has suffered the requisite harm." *Californians for Renewable Energy*, 860 F. Supp. 2d at 48 (citing *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).  Plaintiff has entirely failed to do so.  At most, Plaintiff has asserted that unspecified "Scenic America members suffer ongoing economic, aesthetic, recreational, and psychological harm from commercial digital billboards." Compl. ¶ 18.  That generalized assertion is insufficient as a matter of law.  "Because [Plaintiff] has not identified a single member who was or would be injured by [the 2007 Guidance], it lacks standing to raise this challenge" on behalf of its members.  *Chamber of Commerce*, 642 F.3d at 200; *see also Western Wood Preservers Inst.* v. *McHugh*, No. 12-1253, ___ F. Supp. 2d ___, 2013 WL 692789 (D.D.C. Feb. 27, 2013) (granting motion to dismiss where the plaintiff organizations failed to identify specific members who suffered the alleged injury).

Even if Plaintiff had identified any particular member of its organization who had suffered the alleged injury, it has failed to allege injuries to its members that are "concrete and particularized," not merely conjectural and hypothetical. *Lujan*, 504 U.S. at 560.  In its Complaint, Plaintiff alludes to various vague categories of injury, but none identifies the necessary personal stake in the outcome of the controversy to establish subject-matter jurisdiction on behalf of Plaintiff's members.

Plaintiff's foremost asserted harm is a "procedural and informational harm" that its members allegedly suffered by virtue of being deprived of the "opportunity to influence public policy related to digital billboards" and being denied "access to information about the safety, economic, and aesthetic impacts of CEVMS on communities across the country." Compl. ¶ 13. But even leaving aside the fact that the Secretary's role is not to promulgate its own standards but rather to enter into agreements with the States and to review proposed state conduct, "[p]rocedural violations alone . . . are insufficient to establish injury for standing purposes." *Black* v. *LaHood*, 882 F. Supp. 2d 98, 106 (D.D.C. 2012). Instead, "[a] plaintiff asserting procedural harm must show that there is a substantial probability that the substantive agency action that disregarded a procedural requirement created a demonstrable risk of injury to the particularized interests of the plaintiff." *Id.* (ellipsis and internal quotation marks omitted). Denial of the opportunity to comment on a proposed rule does not, on its own, constitute an injury for standing purposes. *See Californians for Renewable Energy*, 860 F. Supp. 2d at 49 (citing *International Brotherhood of Teamsters* v. *TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005)) (noting that "the mere inability to comment effectively or fully, in and of itself, does not establish an actual injury") (internal quotation marks and citation omitted)). The "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496; *see also United Transportation Union* v. *ICC*, 891 F.2d 908, 918 (D.C. Cir. 1989) (requiring "some connection between the alleged procedural injury and a substantive injury that would otherwise confer . . . standing").

In an effort to manufacture a substantive injury to keep its Complaint alive, Plaintiff summarily lists a series of generalized injuries, none of which is sufficiently particular to allege an injury in fact. Plaintiff asserts that its members suffer "ongoing economic, aesthetic, recrea-

tional, and psychological harm from commercial digital billboards erected and operated near their homes, businesses, and properties, in their communities, and along the roadways they drive." Compl. ¶ 18. But that laundry list of nebulous injuries cannot support standing. The Complaint does not attempt to identify the particular economic, aesthetic, recreational, or psychological harm suffered, much less how any particular member of Plaintiff's organization has suffered it.

The Complaint does not even allege that Plaintiff's members own or occupy property affected by digital billboards in some way or that their enjoyment of particular recreational lands is affected by digital billboards. For example, "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth*, 528 U.S. at 183 (quoting *Sierra Club* v. *Morton*, 405 U.S. 727, 735 (1972)). It is not sufficient simply to assert a "recreational" injury, as Plaintiff has done here. Here, Plaintiff alleges that, as a general matter, digital billboards "shine day and night into citizens' backyards and bedrooms" and "mar the beauty of America's countryside and communities." Compl. ¶ 4. But Plaintiff has not alleged that any of its members is affected by digital billboards in either of those ways. And it bears emphasizing that the 2007 Guidance applies only to digital billboards that are located in commercial or industrial areas. *See* 23 U.S.C. § 131(d).

Plaintiff's allegations are similar to allegations that this Court held insufficient to establish standing in *Californians for Renewable Energy*. In that case, the Court granted the motion to dismiss for lack of standing because, *inter alia*, allegations that the plaintiff organization's president would suffer aesthetic, environmental, and recreational harm were too broad to allege standing and did not establish that the president faced "actual or imminent injury." 860 F. Supp. 2d at

50-51 (internal quotation marks omitted).  The complaint said nothing specific about the president's particular aesthetic or recreational interests; it stated only that the organization had "members who reside, recreate, or otherwise utilize the areas in or near a number of the sites [in question]."  *Id.* at 51.  This Court found those allegations insufficient to establish that any particular member had suffered an actual injury.  Moreover, although the organization's president claimed in a declaration that he regularly visited one of the sites at issue and was denied access on one occasion, the Court concluded that, because he did not specify the purpose for which he had visited the site, he had failed to identify "what kind of harm he would have suffered if denied access."  *Id*.  If anything, the allegations in the Complaint in this case are even more general—and therefore are surely also insufficient to establish Article III standing.

The same is true for Plaintiff's generalized allegation that digital billboards "distract drivers, increasing the risk of car crashes involving [its] members."  Compl. ¶ 19.  "Outside of increased exposure to environmental harms, hypothesized 'increased risk' has never been deemed sufficient 'injury.'"  *Center for Law and Education* v. *Department of Education*, 396 F.3d 1152, 1161 (D.C. Cir. 2005).  And that is for good reason:  Article III requires an "imminent" or "certainly impending" injury, which cannot be demonstrated when a plaintiff alleges only a hypothetical risk of injury at some unspecified future time.  *Lujan*, 504 U.S. at 564 n.2 (emphasis and internal quotation marks omitted).

"[E]ven if 'risk' were sufficient injury for standing in the non-environmental context, [the plaintiff] would have to show that the challenged conduct has created a demonstrably increased risk that actually threatens the plaintiff's particular interests."  *Center for Law and Education*, 396 F.3d at 1161 (emphasis and internal quotation marks omitted).  "Were all purely speculative increased risks deemed injurious, the entire requirement of actual or imminent injury would be

11

rendered moot, because all hypothesized, nonimminent injuries could be dressed up as increased risk of future injury." *Natural Res. Def. Council* v. *EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006) (brackets and internal quotation marks omitted).  Plaintiff has not demonstrated a substantial probability that its members will be injured in car crashes because of digital billboards; the alleged "increased risk" is purely hypothetical and conjectural and therefore unable to support jurisdiction.

### 2.    Plaintiff Has Not Alleged Causation

Even if Plaintiff had alleged a concrete and particularized injury to its members, it has failed to allege a causal relationship between that asserted harm and the 2007 Guidance.  Plaintiff alleges that the 2007 Guidance "reversed . . . long-standing prohibitions" against digital billboards, thereby "authoriz[ing] federal officials to approve state laws and procedures that permit digital billboards," and further alleges that, "[s]hielded by the 2007 de facto rule change, advertising companies have constructed and operated new digital billboards."  Compl ¶¶ 3, 4, 17. Plaintiff, however, ignores the fact that digital billboards can only exist if a State decides to authorize their use in the first place.  Plaintiff's alleged injuries are thus attributable to the decisions of state and local lawmakers in allowing digital billboards within their jurisdictions—decisions Plaintiff admits it can and does challenge.  *See* Compl. ¶ 17.

Where alleged injuries arise not from a government regulation itself but from agency action relating to third parties, it is "substantially more difficult" to establish standing.  *Lujan*, 504 U.S. at 562.  As a constitutional matter, courts may only "redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  *Simon* v. *Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *Florida Audubon Society*, 94 F.3d at 669-71.  Where "the necessary elements of causation and redressability" depend on third-party activity, the plaintiff bears a greater bur-

den to "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability." *Lujan*, 504 U.S. at 562.

Here, Plaintiff claims harm to its members that is not directly traceable to FHWA in the 2007 Guidance.  The 2007 Guidance permits FHWA's Division Offices to approve state proposals to allow digital billboards, if the Division Office concludes that the particular proposal otherwise comports with the applicable federal-state agreement and other laws and regulations. State and local governments may choose *not* to permit digital billboards within their jurisdiction, or to impose various restrictions on their use.[3]  The 2007 Guidance neither requires nor authorizes digital billboards; the State must first act to authorize the use of digital billboards, and, as to off-premise billboards, the FHWA Division Office must then assess whether the State's proposal is consistent with the applicable federal-state agreement and other laws.  Only then may a digital billboard be permitted in any particular location.  Any alleged harm to Plaintiff's members caused by a digital billboard results from the actions of state and local governments in the first instance—and, as a harm resulting from the actions of third parties, it cannot confer standing. *See, e.g.*, *Allen* v. *Wright*, 468 U.S. 737, 757 (1984); *Jones* v. *Louisiana State Bar Ass'n*, 738 F. Supp. 2d 74, 79 (D.D.C. 2010) (determining that an injury flowing from Congress's enacting legislation was not sufficient for standing), *aff'd*, 2011 U.S. App. LEXIS 20308 (D.C. Cir. Oct. 3, 2011); *Citizens Alert Regarding the Environment* v. *Leavitt*, 355 F. Supp. 2d 366, 373 (D.D.C. 2005) (concluding that an injury was not fairly traceable where the plaintiff sustained injury notwithstanding an agency's non-compliance with a statute).

---

[3] The variation in state and local regulations regarding digital billboards illustrates that the alleged injury to Plaintiff's members is caused by state and local decisionmakers, not by the 2007 Guidance.  For example, the alleged harm from digital billboards "shin[ing] . . . into citizens' backyards and bedrooms" and increasing the risk of "driver distraction" flow from the State or locality's particular standards for billboard brightness, location, duration of message, and transition time.  Compl. ¶ 4.

In addition, Plaintiff cannot ignore the fact that States and localities already allowed digital billboards *before* issuance of the 2007 Guidance.  Indeed, the Guidance is premised on the fact that some Division Offices had already approved state proposals to permit digital billboards—proposals that, in FHWA's view, could provide helpful guidance to other Division Offices considering similar proposals.  The alleged harms to Plaintiff's members from digital billboards cannot be traced to the 2007 Guidance for the simple reason that digital billboards predated that guidance.

This case is similar to *Black*, in which this Court held, on a motion to dismiss, that neighbors of a proposed bike trail project did not have standing to challenge approval of the project because the injury of which they complained—closure of the road to vehicular traffic—occurred years before the bike trail proposal and was a decision made by local officials, who were not defendants in the case.  *See* 882 F. Supp. 2d at 105.  Because the decision to construct a bike trail on the road did not cause plaintiffs' injury, this Court concluded that plaintiffs had failed to establish standing.  *See id.*  The same reasoning applies here.

### 3.    Plaintiff Has Not Alleged Redressability

For similar reasons, Plaintiff has not sufficiently alleged that a favorable decision in the case will redress the alleged injury to its members.  Plaintiff claims that vacating the 2007 Guidance will redress the injury because, "[w]ithout the 2007 de facto rule, digital billboards that injure Scenic America members would be subject to removal or an order to cease operating in a manner that violates the regulatory prohibition against intermittent lighting in billboard advertisements."  Compl. ¶ 21.  That claim is a *non sequitur*.  The 2007 Guidance neither requires nor authorizes the billboards that are allegedly harming Plaintiff's members, and vacating the Guidance would not require removal of the billboards.  Existing digital billboards are operated pursuant to state and local law.  The underlying state and local laws and regulations were, if necessary,

approved by a FHWA Division Office, either before or after the 2007 Guidance.  As evidenced by the fact that some Division Offices approved state digital billboard proposals before the 2007 Guidance, those approvals were not contingent on the 2007 Guidance.  Vacating the Guidance would therefore not revoke the Division Offices' approval of existing state and local laws and regulations.  Nor would vacating the 2007 Guidance require States and localities to change those laws.  In short, vacating the Guidance would have no effect on the existing digital billboards that are allegedly causing Plaintiff's members harm.

> **B.**    **The Complaint Does Not Allege Sufficient Facts To Establish Plaintiff's Standing To Sue On Its Own Behalf**

In addition to claiming standing on behalf of its members, Plaintiff claims standing to challenge the 2007 Guidance on its own behalf as an organization.  In order to establish organizational standing, Plaintiff must satisfy the same three requirements:  (1) a concrete and particularized injury, (2) traceability, and (3) redressability.  *See Lujan*, 504 U.S. at 560-61.  Plaintiff cannot do so.

> **1.**    **Plaintiff Has Not Alleged A Particularized Injury To Itself**

An organization seeking to establish standing must show that the conduct of the defendant has caused concrete and particularized harm to the organization's activities.  *See National Taxpayers' Union, Inc.* v. *United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995); *Center for Law and Education* v. *Department of Education*, 315 F. Supp. 2d 15, 23-24 (D.D.C. 2004), *aff'd*, 396 F.3d 1152 (D.C. Cir. 2005).  Specifically, an organization must show that "discrete programmatic concerns are being directly and adversely affected by the challenged action," with a consequent drain on the organization's resources.  *National Taxpayers' Union*, 68 F.3d at 1433 (internal quotation marks and citation omitted).  "The law is clear that actions contrary to an organization's mission do not create an injury if the organization's activities are not somehow impeded

. . . . Were an association able to gain standing merely by choosing to fight a policy that is contrary to its mission, the courthouse door would be open to all associations." *Long Term Care Pharmacy Alliance* v. *UnitedHealth Group, Inc.*, 498 F. Supp. 2d 187, 192 (D.D.C. 2007).

Here, Plaintiff alleges that, "[f]or over twenty years, Scenic America . . . has sought to build a national conservation movement that protects the nation's roadways from billboard blight," and further alleges that "billboard reduction" is one of the organization's missions, which it pursues through "advocacy, education, and technical assistance." Compl. ¶ 7. The Complaint also alleges that the organization has been harmed by the 2007 Guidance because the Guidance "has caused Scenic America and its affiliates to pursue costly strategies to oppose the[] proliferation [of digital billboards], including training their members to combat a larger number of CEVMS; educating state and local decision makers about the safety, economic, and aesthetic issues that CEVMS pose; and challenging individual CEVMS in court or seeking judicial review of state statutes or regulations." Compl. ¶ 16.[4]  The Complaint thus does nothing more than to describe purported harm to the organization's general mission and its litigation and lobbying efforts—a harm that is not sufficiently concrete and particularized to invoke this Court's jurisdiction.

As the D.C. Circuit has explained, "[this court] has not found standing when the only 'injury' arises from the effect of the regulations on the organizations' lobbying activities (as opposed to the effect on non-lobbying activities):  'Conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing.  Frustration of an organization's objectives is the type of abstract concern that does not impart standing.'" *Center*

---

[4] Plaintiff also claims "procedural and informational harm" like that allegedly suffered by its members.  Compl. ¶ 13.  As discussed above, procedural harm is insufficient, by itself, to confer standing.  *See* p. 9, *supra*.

*for Law and Education*, 396 F.3d at 1161-62 (brackets omitted) (quoting *National Treasury Employees Union* v. *United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996)).  Plaintiff alleges only that the 2007 Guidance conflicts with Scenic America's mission and that the organization is now doing more of what it has been doing for twenty years (long before the Guidance): opposing billboards through education, lobbying, and litigation.  Plaintiff identifies no way in which Scenic America's activities have been impeded by the 2007 Guidance.

Plaintiff does not even allege that other activities in which Scenic America engages are impaired because it must divert resources from those activities in order to respond to the 2007 Guidance.  And such an allegation would still be insufficient to establish standing here.  "[T]he diversion of resources to litigation or investigation in anticipation of litigation does not constitute an injury in fact sufficient to support standing."  *Equal Rights Center* v. *Post Properties, Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011).  Moreover, this case is easily distinguished from *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982), where the Supreme Court held that an organization dedicated to promoting equal-access housing had standing to challenge defendants' practice of steering prospective tenants away, because that practice "perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income home-seekers."  *Id.* at 379.  "Here, the only 'service' impaired is pure issue-advocacy—the very type of activity distinguished by *Havens*."  *Center for Law and Education*, 396 F.3d at 1162.

### 2.    Plaintiff Has Not Alleged Causation

Even if Plaintiff had alleged a concrete and particularized injury, Plaintiff cannot allege that the injury is "fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560-61 (alterations in original) (internal quotation marks omitted).  Asserting that Scenic America is spending more money to oppose more digital billboards than it previously had due to the

17

"proliferat[ion]" of digital billboards after the 2007 Guidance is not fairly traceable to the 2007 Guidance.  Compl. ¶ 16.  As previously discussed, the decision of whether and how to permit digital billboards rests in the first instance with state and local governments.  *See* pp. 12-13, *supra*.  Any increase in digital billboards is directly traceable to the independent decisions of state and local officials, both before and after the 2007 Guidance, to permit those billboards.

### 3.      Plaintiff Has Not Alleged Redressability

Finally, for the reasons previously discussed, Plaintiff has failed to allege that any supposed injury to Scenic America is likely to be redressed by a decision from this Court.  *See* pp. 14-15, *supra*.  A decision vacating the 2007 Guidance will not halt the operation of the existing digital billboards that Plaintiff claims it is spending money to oppose.   Indeed, although the Complaint alleges that Scenic America would "spend fewer resources combating *new* digital billboards" if the Court vacated the 2007 Guidance—itself pure speculation—Plaintiff also appears to allege that it will instead spend those resources opposing existing digital billboards and seeking "removal or an order to cease operating."  Compl. ¶ 21.  Thus, win or lose, Scenic America plans to spend its resources lobbying and litigating against digital billboards, new or old.  A decision by this Court would not redress that "injury."

## II.      THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE 2007 GUIDANCE DOES NOT CONSTITUTE FINAL AGENCY ACTION

Even if the Court were to reach the merits of Plaintiff's claims, the Complaint has not stated a valid claim and should be dismissed.  Contrary to Plaintiff's assertions, FHWA's 2007 Guidance is subject to judicial review only if it constitutes "final agency action."  5 U.S.C. § 704.  Although Plaintiff claims violations of both the APA and the HBA, the HBA does not provide a

cause of action for review of FHWA action outside narrow circumstances not applicable here.[5] As a result, the reviewability of the entire Complaint depends upon the APA's doctrine of finality. *See, e.g.*, *Holistic Candlers and Consumers Ass'n* v. *FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (noting that the appellants' allegations of violations of First Amendment and the Food, Drug, and Cosmetic Act relied on the APA "to provide a cause of action"), *cert denied*, 133 S. Ct. 497 (2012); *National Ass'n of Home Builders* v. *Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (noting that the agency action at issue must be final under the APA to be reviewable because the Endangered Species Act contains no statutory review provision). "The doctrine of finality prevents courts from reviewing agency decisions before they are final so as to 'avoid premature intervention in the administrative process.' Absent facts sufficient to allege a final agency action, a complaint will be dismissed for failure to state a claim." *West* v. *Horner*, 810 F. Supp. 2d 228, 236 (D.D.C. 2011) (quoting *CSI Aviation Servs., Inc.* v. *DOT*, 637 F.3d 408, 411 (D.C. Cir. 2011)).

Agency action is final and reviewable only when (1) the action taken "is one by which 'rights or obligations have been determined, or from which legal consequences will flow,'" and (2) "it 'mark[s] the consummation of the agency's decisionmaking process.'" *West*, 810 F. Supp. 2d at 236 (alteration in original) (quoting *Bennett* v. *Spear*, 520 U.S. 154, 177-78 (1997)). Neither of those prerequisites is satisfied here.

### A.  No Legal Consequences Flow From FHWA's Guidance

1.  As an initial matter, "[t]his Circuit has recognized that while 'agency rules that establish binding norms or agency actions that occasion legal consequences are subject to review,'

---

[5] The HBA provides that a State may seek judicial review of a final order by the FHWA withholding federal highway funds from the State for, *inter alia*, the failure to provide for effective control of outdoor advertising signs. *See* 23 U.S.C. § 131(l).

'general statements of agency policy' are unreviewable." *Center for Food Safety* v. *Salazar*, 898 F. Supp. 2d 130, 153 (D.D.C. 2012) (brackets omitted) (quoting *Center for Auto Safety* v. *NHTSA*, 452 F.3d 798, 807 (D.C. Cir. 2006)). Courts in this Circuit have repeatedly held that an agency's "[own] internal guidance documents" are general statements of agency policy and "do not create enforceable rights." *Id.*

For example, in *Center for Auto Safety*, the D.C. Circuit held that letters sent by the National Highway Traffic Safety Administration to motor vehicle manufacturers outlining the agency's policy for regional vehicle recalls were not reviewable under the APA because they were "policy guidelines," not "binding rules," and thus did not constitute final agency action. 452 F.3d at 800 (internal quotation marks omitted). The court had "no doubt that the guidelines reflect [the agency's] views on the legality of regional recalls," but that did "not change the character of the guidelines from a policy statement to a binding rule." *Id.* at 808. The court affirmed dismissal of the complaint because "the case law is clear that we lack authority to review claims under the APA 'where an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party.'" *Id.* (quoting *Independent Equipment Dealers Ass'n* v. *EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)).

The unreviewability of policy statements is even clearer in the case of internal policy memorandums circulated within an agency. For example, in *St. Croix Chippewa Indians of Wisconsin* v. *Kempthorne*, No. 07-2210, 2008 WL 4449620 (D.D.C. Sept. 30, 2008), *aff'd on other grounds*, 384 Fed. Appx. 7 (D.C. Cir. 2010), the court held that a guidance memorandum sent from the Assistant Secretary of the Interior to agency employees, aimed at "assisting agency reviewers in their assessment of [certain] off-reservation . . . gaming applications," did not constitute final agency action. *Id.* at *6. Although the guidance memorandum identified specific ques-

20

tions and materials that the agency should consider when assessing an application, it did not pur-

port to change a rule and left the ultimate decision regarding pending applications to the agen-

cy's discretion.  *Id.*

        2.        FHWA's 2007 Guidance is not final agency action because it is not an action "by

which rights or obligations have been determined, or from which legal consequences will flow."

*Bennett*, 520 U.S. at 177-78 (internal quotation marks omitted).  "In determining whether an

agency has issued a binding norm or merely an unreviewable statement of policy," courts are

guided by a number of factors, including (1) the agency's own characterization of the action; (2)

whether the action was published in the Federal Register or the Code of Federal Regulations; (3)

whether the action has binding effects on the agency or has instead genuinely left the agency and

its decisionmakers free to exercise discretion; and (4) whether the action imposed any rights or

obligations or otherwise bound private parties.  *Center for Auto Safety*, 452 F.3d at 806-07 (in-

ternal quotation marks omitted).  Analysis of those factors supports the conclusion that the 2007

Guidance was not final agency action.

        *First*, FHWA made clear that the "purpose" of the 2007 Guidance was "to provide guid-

ance to Division Offices" and that it was "clarify[ing]" its earlier guidance on changeable mes-

sage signs that had been sent to Regional Offices more than a decade earlier.  FHWA specifically

characterized the 2007 Guidance as an internal communication to its regional Division Offices

that was designed to "provide information to assist the Divisions in evaluating [States'] pro-

posals" regarding digital billboards.  2007 Guidance 1, 4.  The memorandum specifically states

that it "is not intended to amend applicable legal requirements."  *Id.* at 4; *see St. Croix Chippewa

Indians*, 2008 WL 4449620, at *5; *Center for Auto Safety*, 452 F.3d at 808-09 (noting, in deter-

mining that NHTSA letters did not constitute final agency actions, that they "are labeled 'policy

guidelines,' not rules"); *Massachusetts Manufacturing Extension Partnership* v. *Locke*, 723 F. Supp. 2d 27, 40 (D.D.C. 2010) (noting, in determining that there was no final agency action, that the guidelines at issue "do not claim to carry the force of law") (internal quotation marks omitted).

*Second*, the 2007 Guidance does not purport to change any rule and has never been published in the Federal Register or the Code of Federal Regulations.  *See Center for Auto Safety*, 452 F.3d at 808 (noting that the guidelines at issue had not been published in the Code of Federal Regulations); *Massachusetts Manufacturing Extension Partnership*, 723 F. Supp. 2d at 40 (same); *St. Croix Chippewa Indians*, 2008 WL 4449620, at *5 (same).

*Third*, the 2007 Guidance does not have a binding effect on the agency, but instead has "genuinely left the agency and its decisionmakers free to exercise discretion."  *Center for Auto Safety*, 452 F.3d at 806 (brackets and internal quotation marks omitted).  The Guidance simply reaffirms the preexisting policy that "[p]roposed laws, regulations, and procedures that would allow permitting CEVMS subject to acceptable criteria (as described below) do not violate a prohibition against 'intermittent' or 'flashing' or 'moving' lights," as those terms were used in longstanding federal-state agreements.  2007 Guidance 1.  It does not command the Division Offices to accept or reject state proposals regarding digital billboards in any given circumstance; it does not even restrict the "acceptable criteria" that a Division Office may consider in reaching a decision on any particular proposal.

Throughout, the 2007 Guidance emphasizes the discretion that remains with the agency in reviewing state digital billboard proposals.  For example, the Guidance states that digital billboards may be acceptable "if found to be consistent with the [federal-state agreement] and with acceptable and approved State regulations, policies and procedures."  2007 Guidance 2.  Division

22

Offices retain the authority to reject a State's proposed regulations, policies, and procedures upon "determin[ing], based upon all relevant information, that the proposed [regulations] are not consistent with the [federal-state agreement] or do not include adequate standards to address the safety of the motoring public." *Id.* at 3.  And the Guidance makes clear that Division Offices, in reviewing proposed regulations, are to "consider all relevant information, including but not limited to duration of message, transition time, brightness, spacing, and location, to ensure that they are consistent with their FSA and that there are adequate standards to address safety for the motoring public." *Id.*  The 2007 Guidance thus does not dictate the outcome of the decisionmaking process or even restrict the permissible factors to be considered; it merely lists characteristics of state proposals that "have been approved by Divisions to date." *Id.*  The ultimate decision, and the selection and weighing of all appropriate factors in making that decision, are left to the discretion of the particular Division Office considering a particular State's proposal.  *See Massachusetts Manufacturing Extension Partnership*, 723 F. Supp. 2d at 40; *Alliance for Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166, 173 (D.D.C. 2000) (noting that, "[a]s long as the agency remains free to consider the individual facts in the various cases that arise, then the agency action in question has not established a binding norm" (internal quotation marks and citation omitted)).

*Fourth*, the 2007 Guidance does not afford rights to, impose obligations on, or otherwise bind private parties.  It does not impose any additional obligations on States proposing laws, regulations, or procedures to FHWA, nor does it grant States the right to have their proposals approved.  FHWA "has not commanded, required, ordered, or dictated." *Center for Auto Safety*, 452 F.3d at 809.  "It is plain . . . that no legal consequences flow from the agency's conduct to date, for there has been no order compelling [regulated parties] to do anything." *Holistic Candlers and Consumers Ass'n*, 664 F.3d at 944 (brackets and internal quotation marks omitted).

Even if States have voluntarily adopted standards in conformity with the previously approved standards listed in the 2007 Guidance, "*de facto* compliance is not enough to establish that the guidelines have had legal consequences." *Center for Auto Safety*, 452 F.3d at 811 (emphasis omitted); *see also Reliable Automatic Sprinkler Co.* v. *Consumer Product Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (concluding that "[a] request for voluntary compliance clearly has no legally binding effect").

Moreover, as the Guidance itself indicates, States had adopted the standards listed in the 2007 Guidance before it was even issued, and FHWA Division Offices had already approved those standards; the Guidance therefore merely compiled existing practices.  2007 Guidance 3. Similarly, in *Center for Auto Safety*, vehicle manufacturers had already been conducting regional recalls before the agency issued its regional recall guidance letters.  The D.C. Circuit determined that regional recalls could not be a "legal consequence" of the agency guidelines because they "preceded the guidelines."  452 F.3d at 811.  The same is true here.  By restating state proposals that had already been approved by FHWA Division Offices at the time, the 2007 Guidance broke no new ground; it "'left the world just as it found it,'" and thus cannot be fairly described as imposing new legal obligations.  *National Ass'n of Home Builders*, 415 F.3d at 16 (quoting *Independent Equipment Dealers Ass'n*, 372 F.3d at 428).

**B.     The Guidance Does Not Mark The Consummation Of FHWA's Decision-making Process**

Finally, the 2007 Guidance is not the consummation of FHWA's decisionmaking process regarding digital billboards.  The Guidance reads less like the end of a decisionmaking process than the continuation of the agency's consideration of how to assess changeable billboard technology; it repeatedly speaks in terms of potential future agency decisions.  *See American Petroleum Inst.* v. *EPA*, 684 F.3d 1342, 1354 (D.C. Cir. 2012) (concluding that statements that are

predictive of future agency action are not the consummation of the decisionmaking process),
*cert. denied*, 133 S. Ct. 1724 (2013).  The 2007 Guidance states only that, "subject to acceptable
criteria," proposed laws and regulations that would allow permitting CEVMS do not violate pro-
hibitions in federal-state agreements against intermittent, moving, or flashing lights.  2007 Guid-
ance 1.  As the Guidance itself states, the crucial assessment of what criteria define the boundary
between acceptable and unacceptable state proposals remains to be determined on a case-by-case
basis, based on all relevant information.  The Guidance encourages Division Offices to "re-
evaluate their position in light of the . . . considerations" set out in the Guidance.  *Id.*  To aid this
endeavor, moreover, the Guidance compiles "certain ranges of acceptability that have been
adopted in those States that do allow CEVMS that will be useful [to Division offices] in review-
ing State proposals on this topic."  *Id.* at 3.  And the Guidance urges Division Offices "to work
with their State in its review of their existing [federal-state agreements] and, if appropriate, assist
in pursuing amendments to address proposed changes relating to CEVMS or other matters."  *Id.*
at 4.  As the foregoing statements indicate, the 2007 Guidance is an attempt by the agency to
*continue* the decisionmaking process—by compiling data and passing it along to Division Offic-
es for consideration—not a consummation of that process.

In addition, the 2007 Guidance specifically states that the agency "may provide further
guidance in the future as a result of additional information received through safety research,
stakeholder input, and other sources."  2007 Guidance 1.  Thus, not only is the agency's policy
expressly evolving, but Plaintiff retains the ability to influence that policy.  *See Center for Auto
Safety*, 452 F.3d at 809 (noting that "the guidelines notably conclude in a way to emphasize that
the agency's position on regional recalls remains flexible").  In such circumstances, the interest
in postponing judicial review is at its zenith.  Judicial review when the agency's position is tenta-

tive "improperly intrudes into the agency's decisionmaking process." *Reliable Automatic Sprinkler*, 324 F.3d at 732 (internal quotation marks and citation omitted).  And it "also squanders judicial resources," because "the challenging party still enjoys an opportunity to convince the agency to change its mind." *Id.*

*     *     *     *     *

In sum, the 2007 Guidance clarified the decade-old 1996 Guidance, compiled existing practices, and left the decisions with respect to digital billboard technology to state and local authorities, where Congress had squarely put them.  As a result, no final agency action is at issue here.  For that reason, and because Plaintiff lacks standing to challenge the 2007 Guidance, OAAA's motion to dismiss should be granted.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

By: /s/ Kannon K. Shanmugam
    Barry S. Simon (#245209)
    Kannon K. Shanmugam (#474304)
    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, DC 20005
    T:  (202) 434-5000
    F:  (202) 434-5029

    *Counsel for Outdoor Advertising*
    *Association of America, Inc.*

Dated:  June 7, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June, 2013, a true and correct copy of Outdoor Advertising Association of America, Inc.'s Motion to Dismiss, Memorandum in Support of the Motion to Dismiss, and Proposed Order were served via ECF upon all counsel of record.


<u>/s/  Kannon K. Shanmugam</u>
Kannon K. Shanmugam